

# RICHMOND PLACE
## REHABILITATION & HEALTH CENTER
— LEXINGTON —
### BROOKDALE SENIOR LIVING

## ADMISSION AGREEMENT

I. **PARTIES.** This Admission Agreement ("Agreement") is made this 27th day of June, 2015, by and between BLC Lexington SNF, LLC d/b/a Richmond Place Rehabilitation and Health Care Center, a licensed skilled nursing provider, located at 2770 Palumbo Drive, Lexington, KY 40509 (the "Rehabilitation/Skilled Nursing Center," "we," "us" or "our") and Donald Skipworth (the "Resident," "you" or "your"), and/or Terry Skipworth (Name of "Resident Representative") on behalf of Resident, in consideration of the mutual covenants contained in this Agreement. (Resident and Resident Representative may be collectively referred to as "Resident," "you" or "your.") The parties designated above do hereby agree to the following terms, conditions, and arrangements regarding the provision of nursing and/or personal care to the Resident.

II. **TERM.** The term of this Agreement shall commence on the date of admission, and continue in full force and effect until the Resident is discharged or transferred from the Rehabilitation/Skilled Nursing Center and all Resident's personal effects are removed from the Resident's room.

III. **OBLIGATIONS OF REHABILITATION/SKILLED NURSING CENTER**

   A. **BASIC SERVICES** – We agree to provide those basic items and services that we are licensed to provide and determined necessary by your physician and our interdisciplinary team. Such services are explained in more detail in **Attachment A**.

   B. **REQUIRED QUALIFICATIONS** – We represent and warrant that we have all the necessary qualifications and/or licenses required by federal, state, and local laws and regulations to provide skilled nursing care in this state.

   C. **NONDISCRIMINATION STATEMENT** – We welcome all persons in need of our services and do not discriminate on the basis of age, disability, race, color, national origin, ancestry, religion, or sex. You understand that admission or re-admission to the Rehabilitation/Skilled Nursing Center may be restricted by bed availability or limits in our ability to meet your needs.

IV. **PAYMENT INFORMATION**

   A. **PRIVATE PAY** – You agree to pay us a Daily Rate as specified on the Signature Page of this Agreement, unless you qualify for Medicare, Medicaid or other approved third-party insurance coverage. The Daily Rate shall be paid for the day of admission and the

day of discharge as a Private Pay resident. **Attachment A** provides an overview of the services covered or not covered by the Daily Rate. You also agree to be financially responsible for all charges for items and services you receive that are in excess of those included in the Daily Rate. You agree upon admission to pay in advance the Daily Rate for the first thirty (30) days. Failure to pay is grounds for termination of this Agreement.

If you have a long term care insurance policy to cover or supplement the costs of your stay at the Rehabilitation/Skilled Nursing Center, you understand and agree that for purposes of this agreement, you are considered a private pay resident. As such, you understand and agree that you will pay for your services in accordance with the timing and other requirements for payment for a private pay resident, regardless of the timing of reimbursement from your long term care insurance carrier.

B. **MEDICARE** – If your care may be paid for under the Medicare program, we shall initially bill Medicare for such services; however, you understand that we make no guarantee that your care will be covered by Medicare. You agree to be financially responsible for all charges not paid for by Medicare, including, without limitation, applicable co-insurance and deductible amounts, except to the extent prohibited by law. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to Medicare residents:

1. **Eligibility.** In order to be eligible for Medicare coverage, you must meet all Medicare program requirements. You certify that the information that you provide to us related to Medicare eligibility is correct. In the event that Medicare coverage is rejected or denied, you will remain responsible for payment of our charges for your care and services, as allowable by law.

2. **Daily Rate Payment.** **Attachment A** provides a list of supplies and services generally paid by the Medicare program, and those supplies and services not paid for by the Medicare program for which you will be separately charged. This list is subject to change by the Medicare program. For complete and updated Medicare coverage information, please refer to www.Medicare.gov. A detailed list of charges for supplies and services available in the Rehabilitation/Skilled Nursing Center but not covered under the Medicare program, including the daily coinsurance rate, is available upon request.

3. **Limited Coverage.** You understand that Medicare coverage is established by federal guidelines and not by us. Medicare coverage is limited in that only a specified level of care is covered for a specified number of days (benefit period). If you no longer meet coverage criteria, Medicare can terminate your coverage before the use of all allotted days in the current benefit period.

4. **Expiration of Benefits.** When Medicare coverage expires, you may remain in the Rehabilitation/Skilled Nursing Center as private pay or if other payment arrangements have been made. If you wish to be discharged from the Rehabilitation/Skilled Nursing Center upon expiration of Medicare benefits, you should advise us at the time of your admission or at the earliest practicable opportunity.

5. **Coinsurance and Deductibles.** You are responsible for payment of any Medicare coinsurance and/or deductibles.

   If you intend to become private pay when Medicare benefits expire, you agree to pay in advance for one month's private Daily Rate when you change to private pay status.

6. **Medicare Private Rooms.** Medicare-funded residents are provided semi-private rooms. Private rooms are available to Medicare-funded residents for a room surcharge of _____ ($\_\_\_\_\_.00) dollars a day.

C. <u>THIRD PARTY AGREEMENTS</u> - If your care may be paid for by a managed care or third-party indemnity payor, we shall initially bill that payor for such services; however, you understand that we make no guarantee that your care will be covered by the payor. You agree to be financially responsible for all charges not paid for by the payor, including, without limitation, applicable co-insurance and deductible amounts, except to the extent prohibited by law or contractually agreed upon. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to managed care/insurance residents:

1. **Managed Care Agreement.** Notwithstanding anything in this Agreement to the contrary, during such time as (i) a written agreement (the "Provider Agreement") is in effect between the Rehabilitation/Skilled Nursing Center and a managed care organization (the "Managed Care Company") for the reimbursement to the Rehabilitation/Skilled Nursing Center for certain services ("Covered Services") to enrolled members of the Managed Care Company's plan; and (ii) you continue as an enrolled Member of the Managed Care Company's plan, you will not be responsible to the Rehabilitation/Skilled Nursing Center for the payment of any Covered Services. However, you will remain liable for services for which the Rehabilitation/Skilled Nursing Center is not entitled to reimbursement under the Provider Agreement, including deductibles, co-payments, co-insurance and/or payment for non-Covered Services.

2. **Indemnity Insurance Agreement. (for example, Worker's Compensation Insurance)** Notwithstanding anything in this Agreement to the contrary, you will not be responsible to the Rehabilitation/Skilled Nursing Center for the payment of any services provided by the Rehabilitation/Skilled Nursing Center (the "Indemnity Services") to the extent the Indemnity Services are subject to reimbursement by your insurance company pursuant to a written agreement (the "Indemnity Insurance Agreement") between you and the Insurance Company. However, you shall remain liable for payment for all services for which the Rehabilitation/Skilled Nursing Center is not entitled to reimbursement under the Indemnity Insurance Agreement, including deductibles, co-payments, co-insurance and/or payment for non-covered Indemnity Services.

3. **Requirement to Cooperate.** If you fail to cooperate or do not provide, in a timely manner, the information required by the Rehabilitation/Skilled Nursing Center to obtain all appropriate authorizations from a Managed Care Company or an Insurance Company of your services at the Rehabilitation/Skilled Nursing Center,

you will be responsible for all charges to the extent the Rehabilitation/Skilled Nursing Center is not reimbursed by the Managed Care Company or Insurance Company. If discharge from the Rehabilitation/Skilled Nursing Center is appropriate according to the Managed Care Company or Insurance Company's guideline, you are responsible for payment of the Daily Rate and all services provided as of the date such payments cease. It is understood that you may be discharged for non-payment of sums due under this Agreement.

D. <u>MEDICAID</u> –

You understand that we make no guarantee that your care will be covered by the Medicaid program. If your care may be paid for under the Medicaid program, we shall initially bill Medicaid for such services. You agree to pay any applicable cost associated with the Medicaid program at the amount stipulated by the Medicaid program within the due dates outlined in this Agreement. You understand and agree that your payor source will be considered private pay as outlined above in situations when the Medicaid eligibility is pending a final decision. Failure to pay your share of cost, as determined by the Medicaid program, is grounds for termination of this Agreement.

A Medicaid Resident is one who receives benefits from the Medicaid Program for his or her nursing home care. Some additional items and services may be covered by Medicaid. The following apply to Medicaid Residents:

1. **Eligibility.** In order to be eligible for Medicaid coverage, you must meet all Medicaid program requirements. You are responsible for filing and for retaining Medicaid coverage.

2. **Financial Responsibility.** If you are a Medicaid beneficiary, we are entitled to any of your income, including, but not limited to, Social Security, with the exception of the state-designated amount of your personal allowances. As noted previously herein, you agree to assign all benefits to third-party payments and other sources of income to us to apply to your account at the Rehabilitation/Skilled Nursing Center to pay for your costs of care and services rendered.

3. **Daily Rate Payment. Attachment A** provides a list of supplies and services generally paid by the Medicaid program, and those supplies and services not paid for by the Medicaid program for which you will be separately charged and may be paid by your personal allowance or other sources. This list is subject to change by the Medicaid program. For complete and updated Medicaid coverage information, please contact the local Medicaid agency office. A detailed list of and charges for supplies and services available in the Rehabilitation/Skilled Nursing Center but not covered under the Medicaid program is maintained in the Business Office and is available for review during normal business hours.

4. **Medicaid Private Rooms.** Medicaid-funded residents are provided semi-private rooms.

E. <u>ASSIGNMENT OF BENEFITS</u> – You hereby irrevocably authorize us to make claims and to take other actions to secure our receipt of third-party payments to reimburse us for your stay and care at the Rehabilitation/Skilled Nursing Center. To the fullest extent permitted by law, as security for payment of our charges, you hereby assign to us all of your rights to any third-party payments now or subsequently payable to the extent of all

charges due under this Agreement. Should you receive any payments from a third party intended to satisfy your obligation to pay for services provided to you by the Rehabilitation/Skilled Nursing Center, you agree to promptly remit the amount of said payment to us to the extent necessary to satisfy the charges under this Agreement.

F. CHANGE IN RATE – The Daily Rate, set out on the Signature Page of this Agreement, and all other fees and charges may be adjusted by us at any time upon thirty (30) days advance written notice to you. Should you require or request additional services that are not included in the Daily Rate, your rate will increase accordingly immediately upon the provision of such services.

G. OBLIGATION TO PAY TIMELY – Our charges shall be advance billed monthly to you. These charges are due and payable by the first (1st) day of each month. If payment is not received by the tenth (10th) day of each month, the account balance is considered past due or delinquent, and we may add a late fee of $250.00 to your account unless otherwise prohibited by law. You also agree to pay interest on all outstanding amounts based upon the lesser of the monthly rate of one and one-half percent (1.5%) or the maximum amount permitted by law. In addition, if we retain the services of a collection agency or an attorney to obtain the payment of amounts due hereunder, we shall be entitled to recover from you all collection agency and attorney's fees, court costs and collection expenses. Any late charges do not alter any obligations of any party to this Agreement.

You acknowledge that we do not offer credit or accept installment payments. Our acceptance of a partial payment does not limit our rights under this Agreement.

H. FEE FOR RETURNED CHECKS – A service fee of thirty dollars ($30.00), the actual fee charged by the bank or any other amount allowed under state law, whichever is greater, will be charged for any returned check or denied automatic withdrawal. In the event two (2) consecutive payments are returned by a financial institution for non-sufficient funds, you will thereafter pay the Daily Rate and any other amounts due to Rehabilitation/Skilled Nursing Center by cashier's check.

I. COMMUNICATION WITH REHABILITATION/SKILLED NURSING CENTER – You acknowledge that the communication of health related information is important in meeting your medical and social needs while residing at the Rehabilitation/Skilled Nursing Center. It is agreed that the following (but not limited to the following) will be provided to our representatives upon admission and throughout your stay as necessary:

1. Copies of all Medicare, Medicaid, HMO, Insurance, or other health related identification cards.

2. Changes in the Resident Representative home address, phone numbers or e-mail address.

J. BED HOLDS – You may need to be absent from the Rehabilitation/Skilled Nursing Center temporarily for hospitalization or therapeutic leave. You may request that we hold your bed during this time. This is known as a "bed hold." You shall be given notice of the bed hold option at the time of admission and upon hospitalization or therapeutic leave. Any bed hold authorized by you will result in a bed hold charge equal to the applicable private-pay Daily Rate for the bed being held during the bed hold period, which shall continue until you return to the Rehabilitation/Skilled Nursing

Center or you are discharged and all of your belongings are removed from the room. Responsibility for bed hold payment is as follows:

1. **Private Pay, Third Party Insurance, Medicare Residents.** The Medicare program does not reimburse for bed holds. Your private insurance may or may not pay for bed holds. If you request a bed hold, you will be financially responsible for paying said bed hold charges, unless otherwise covered by a third party insurer. If you elect not to pay to hold your bed, your bed will not be held.

2. **Medicaid Residents.** If you request a bed hold, we will request from the Medicaid contract provider a bed hold. Authorization of the bed hold is made at the sole discretion of the Medicaid contract provider. If Medicaid does not cover bed hold charges, you will be financially responsible for paying said charges. If you elect not to pay to hold your bed, you are entitled to return to the first available semi-private bed at the Rehabilitation/Skilled Nursing Center.

K. RESIDENT REPRESENTATIVE – The Resident Representative may be any person who is (i) legally responsible for you (such as a court-appointed guardian, conservator or holder of a power of attorney), (ii) appointed by you, or (iii) a member of your immediate family. This relationship/granted authority should be noted on the Signature Page of this Agreement.

The Resident Representative will arrange for the provision of personal clothing and care supplies as needed or desired by you and as required by us. The Resident Representative will use your assets to replace any and all furnishings or other property of the Rehabilitation/Skilled Nursing Center, other residents, or our employees, if damaged by you.

The Resident Representative will take no action to spend, dissipate or otherwise transfer your assets which are available for you and/or for your care, nor allow any other third party to take such action, so as to prevent such assets from being used to pay for your care while at the Rehabilitation/Skilled Nursing Center.

When your Resident Representative signs this Agreement on your behalf, your Resident Representative is responsible for payments to us to the extent your Resident Representative has access to and control of your income and/or resources. Resident Representative agrees that upon your discharge from the Rehabilitation/Skilled Nursing Center, he/she will take responsibility for your residential and medical needs. By signing this Agreement, your Resident Representative does not incur financial liability unless the Resident Representative withholds, misappropriates or otherwise does not make available to us the payment of your financial obligations under this Agreement. In such case, the Resident Representative will be obligated to pay to us from Resident Representative's own resources, as liquidated damages, an amount equivalent to any payments or funds of the Resident which are available to pay for Resident's care.

The Resident Representative understands and acknowledges that we are relying upon the above warranties, representations, covenants and agreements in admitting you to the Rehabilitation/Skilled Nursing Center and understands and acknowledges that if the above warranties and representations are not true, or if the above covenants or agreements are not complied with, we will have detrimentally relied upon them and we will suffer financial harm and loss.

## V. TERMINATION OF AGREEMENT

A. YOUR RIGHT TO TERMINATE – You may terminate this Agreement upon written notice to the Rehabilitation/Skilled Nursing Center Administrator or designee, in accordance with the terms below:

1. **Medicare/Third Party Insurance Residents.** If Medicare or a third party insurance is your payment source you may immediately terminate this Agreement upon written notice. Medicare or a third party insurance will cease payment upon termination. Should you or your belongings remain in the Rehabilitation/Skilled Nursing Center beyond termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Rehabilitation/Skilled Nursing Center.

2. **Private Pay Residents.** If you are a Private Pay resident, you may terminate this Agreement upon written notice in the event of your death or if a physician certifies to us in writing, based upon an examination prior to moving out, that you must be relocated due to your health. You may also terminate this Agreement without cause upon thirty (30) days written notice. Should you or your belongings remain in the Rehabilitation/Skilled Nursing Center beyond termination, you will be charged the Daily Rate through the day you have vacated and all of your belongings are removed from the Rehabilitation/Skilled Nursing Center.

3. **Medicaid Residents.** If Medicaid is your payment source, you may immediately terminate this Agreement upon written notice. Medicaid will cease payment upon termination. Should you or your belongings remain in the Rehabilitation/Skilled Nursing Center beyond termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Rehabilitation/Skilled Nursing Center.

B. PERSONAL PROPERTY OF RESIDENT UPON DISCHARGE – We shall make reasonable efforts to safeguard your personal belongings after discharge. However, we shall not be liable for any damage to or loss of your property. We may dispose of any property left by you if not claimed within thirty (30) days of discharge or transfer, or in accordance with state law.

C. TERMINATION BY US – You will not be transferred or discharged from the Rehabilitation/Skilled Nursing Center except:

1. Where the transfer or discharge is necessary for your welfare and your needs cannot be met in the Rehabilitation/Skilled Nursing Center;

2. If the safety of individuals in the Rehabilitation/Skilled Nursing Center is endangered or if the health of individuals in the Rehabilitation/Skilled Nursing Center would otherwise be endangered;

3. For non-payment of charges due to us, after reasonable and appropriate notice;

4. If our license is revoked or we cease to operate;

5. If your health has improved sufficiently so you no longer need the services provided by us; or

6. If you do not comply with the Resident Handbook or our other operating policies, and after notice of such non-compliance, you continue non-adherence with these guidelines.

D. NOTICE OF TRANSFER OR DISCHARGE – We shall give notice to you, and/or your Resident Representative, of transfer or discharge as follows:

1. Where legally required, this notice shall be given at least thirty (30) days prior to your transfer or discharge.

2. Notice may be given as soon as practicable before transfer or discharges in cases where:

    (a) The safety or health of you or other individuals in the Rehabilitation/Skilled Nursing Center may be endangered;
    (b) Your health has improved sufficiently to allow for a more immediate transfer or discharge;
    (c) You have not resided in the Rehabilitation/Skilled Nursing Center for thirty (30) days; or
    (d) As otherwise permitted by law.

E. HOSPITAL TRANSFERS – If you require medical or psychiatric services not available at the Rehabilitation/Skilled Nursing Center, subject to the order of your attending physician, you agree to be transferred to a more appropriate healthcare provider as indicated by the physician. In an emergency, you agree to be transferred to the nearest hospital.

F. LEAVING AGAINST MEDICAL ADVICE – If you leave us against the medical advice of your attending physician and/or our advice, you assume full responsibility for any injury or harm in connection with such departure, and release us from any and all liability associated therewith.

G. TRANSFERS WITHIN THE REHABILITATION/SKILLED NURSING CENTER – You acknowledge that it may be necessary for us to change your Room during your stay in the Rehabilitation/Skilled Nursing Center. You consent to any such transfer. We will give you as much notice as possible and will attempt to minimize the inconvenience if any such change is made.

H. MEDICARE PART A CHECK-OUT TIME – The check-out time for Medicare Part A residents is 11:00 a.m. Any resident discharging after this time will be charged the private pay Daily Rate for their Room, unless late check-out time is due to necessary clinical services covered by Medicare.

I. REFUNDS – If you are discharged before using full prepaid charges, we shall refund the unused portion of such charges within a reasonable period of time after the date of discharge, and pending the resolution of any remaining insurance. Unless otherwise prohibited by law, you agree we may offset refunds to you by any amount due under the terms of this Agreement.

J. ASSIGNMENT OF PROPERTY – This Agreement shall operate as an assignment, transfer and conveyance to us of so much of your property as is equal in value to the amount of any unpaid obligations under this Agreement, and this assignment will be an obligation of your estate and may be enforced against your estate. Your estate will be

liable and will pay to us an amount equivalent to any of your unpaid obligations under this Agreement. This assignment will apply whether or not you are occupying the Rehabilitation/Skilled Nursing Center at the time of your death.

## VI. CONSENTS, AUTHORIZATIONS AND ACKNOWLEDGEMENTS

A. REHABILITATION/SKILLED NURSING CENTER SERVICES – By signing this Agreement, you consent to the Rehabilitation/Skilled Nursing Center providing routine nursing and other healthcare services as directed by the attending physician. From time to time, we may participate in training programs for persons seeking licensure or certification as healthcare workers. In the course of this participation, care may be rendered to you by such trainees under supervision as required by law. Consent to routine nursing care provided by us shall include consent for care by such trainees. Additionally, by signing this Agreement, you consent to the entire package of services for which we are responsible for providing, including such services provided by third parties from which we choose to obtain such services.

B. PHYSICIAN SERVICES – You acknowledge that you are under the medical care of a personal attending physician.

1. You have a right to select your own attending physician. If, however, you do not select an attending physician, or are unable to select an attending physician, an attending physician may be designated by us. Failure to have an attending physician may be grounds for discharge. You also have a right to select your own consulting physicians or specialty physicians, such as a dentist, podiatrist, cardiologist, etc. You agree that you will communicate changes in physician or other medical professionals associated with your care to our representatives in a timely manner.

2. You recognize and agree that all physicians providing services to you, including those designated by us, are independent contractors. You recognize and agree that such physicians are not our associates or agents, and that we have no liability for any physician's act or omission.

3. You shall be solely responsible for payment of all charges of any physician who renders care to you in the Rehabilitation/Skilled Nursing Center, unless the charges are covered by a third party payor, such as the Medicare or Medicaid programs, through an arrangement with the Rehabilitation/Skilled Nursing Center.

4. You hereby authorize us to provide or arrange for any emergency medical treatment deemed necessary by us for you or to arrange for your transfer to a hospital or other facility for such purposes.

C. THERAPY AND OTHER MEDICARE PART B SERVICES – If any physical, occupational, speech therapy, audiology or other services are ordered by the attending physician and are billed to the Medicare Part B program, you acknowledge and understand that Medicare will pay a portion of the allowable charge (as determined by Medicare) for any covered services and you will be responsible for the remaining coinsurance amount, as well as the full cost of all non-covered services.

D. RESIDENT REFUSAL TO ACCEPT CARE – You have the right to refuse treatment. If you refuse to accept any nursing care, medical or other treatment, or other item or

service that we or the attending physician believes is necessary, you accept responsibility for any consequences resulting from your refusal to accept nursing care or medical treatment and we are released from any and all liability which may result from the lack of this care, treatment, item or service.

## VII. RESIDENT RIGHTS AND RESPONSIBILITIES

A. RESIDENT HANDBOOK AND RULES AND REGULATIONS – The Resident Handbook is provided to you at the time of admission. The Resident Handbook contains information regarding some of our policies and other useful information for reference. You agree that we may adopt reasonable rules and regulations to govern your conduct and responsibilities, and you agree to abide by and conform to these rules and regulations, the Resident Handbook, and our policies and procedures. You agree to honor all rules of courtesy and respect for others. It is understood that any adopted rules and regulations may be amended from time to time as we may require. Any changes to the rules and regulations shall be given to you in writing. Some of these written rules and regulations will be a part of the Resident Handbook. You hereby acknowledge that the Resident Handbook has been furnished and important information has been explained.

B. RESIDENT RIGHTS – As a Resident at the Rehabilitation/Skilled Nursing Center, you are afforded many specific rights under both federal and state law. The Resident Rights are listed in this Agreement as **Attachment B**. You hereby acknowledge receipt and understanding of such rights.

C. RESIDENT'S PERSONAL PROPERTY AND VALUABLES – We strongly discourage you from keeping jewelry, important papers, large sums of money, or other items considered of value in the Rehabilitation/Skilled Nursing Center. We are not responsible for loss of property/valuables that you choose to keep in your possession. You agree that if the presence of any of your personal property violates local, state or federal laws, or our rules and regulations, we have the right to require you to remove them from the Rehabilitation/Skilled Nursing Center or have the right to remove them for you. You may also provide your own furnishings; however, we reserve the right to limit the number and type of furnishings/small appliances if we determine that they are a potential health or safety hazard. You agree you are responsible for the maintenance and repair of any furnishings/personal belongings you bring to the Rehabilitation/Skilled Nursing Center.

D. PERSONAL FUNDS – We encourage families to assist with managing personal funds. If this is not possible, please contact our Director of Financial Services for assistance and available options.

E. RESIDENT RECORDS

1. **Confidentiality.** Information included in your medical record is confidential. Individuals other than you shall not be allowed to review your records without your consent, except as required or permitted by law and as set forth in **Attachment J** regarding our Notice of Privacy Practices.

2. **Consent to Release by Rehabilitation/Skilled Nursing Center.** You authorize us to release all or any part of your medical or financial records to any person or entity that has or may have a legal or contractual obligation to pay all or a portion of the

costs of care provided to you, including but not limited to hospital or medical services companies, third party payors or workers' compensation carriers. You also authorize release of information from medical or financial records to any medical professional or institution responsible for your medical or nursing care when you are transferred or discharged from the Rehabilitation/Skilled Nursing Center.

3. **Photographs.** You agree to allow us to photograph or videotape you as a means of identification and/or for health related purposes, to help locate you in the event of an unauthorized absence from the Rehabilitation/Skilled Nursing Center.

F. <u>RESIDENT DUTIES AND RESTRICTIONS</u>

1. **Resident Grievances.** Residents are urged to bring any grievances concerning the Rehabilitation/Skilled Nursing Center to the attention of the Rehabilitation/Skilled Nursing Center Administrator or designee, see **Attachment D**.

2. **Diet.** You understand that your diet is medically prescribed and therefore, must be monitored by us. You agree to consult with Nursing or Dietary staff regarding food or beverages, including alcoholic beverages, brought into the Rehabilitation/Skilled Nursing Center. We are not liable for any food or beverage service not provided by us.

3. **Medications.** No medications or drugs, prescribed or over-the-counter, may be brought upon Rehabilitation/Skilled Nursing Center premises unless the medications or drugs are labeled according to the requirements of State and Federal law. Packaging of medications must be compatible with our medication distribution system. No drugs or medications, including prescribed or over-the-counter medications, may be brought into the Rehabilitation/Skilled Nursing Center unless they are delivered to the nurses' station.

4. **Guests.** You have the right to associate with your friends and family at any time. Because the Rehabilitation/Skilled Nursing Center is a licensed building, overnight guests are generally not permitted in a resident's room. Limited exceptions may be granted by the Healthcare Administrator based upon the circumstances. Guests are welcome as long as they are not disruptive to our residents or staff. Guests may be asked to leave and may be banned from the Rehabilitation/Skilled Nursing Center if they cause or threaten to cause any physical, verbal, emotional or mental abuse to any resident or staff, if they are a threat to or detrimental to the health, safety or wellbeing of any resident or staff, or if they cause or threaten to cause any damage to our property.

5. **Pets.** Pets are not permitted to live in the Rehabilitation/Skilled Nursing Center, with the exception of service animals.

6. **Smoking.** Smoking is not permitted in any part of the Rehabilitation/Skilled Nursing Center.

7. **Weapons.** Weapons, as defined by us, are not allowed in the Rehabilitation/Skilled Nursing Center or on our property. Weapons include but are not limited to firearms, explosive materials, knives, chemical weapons, and collectible or antique weapons.

8. **Electric Scooters.** Electric scooters and similar vehicles may be used, subject to the following:

   (a) You have impaired mobility due to a disability;

   (b) You are able to safely operate the vehicle and you demonstrate that your operation of the vehicle does not pose a threat to the health and safety of yourself or others;

   (c) The vehicle is operated at a low speed setting; and

   (d) You agree to abide by our safety guidelines for the use of motorized vehicles on the premises, which may be modified from time to time.

   Reasonable accommodations will be made to the rules, policies and practices (upon a showing of necessity) so long as the requested accommodation does not constitute a threat to the health or safety of you, the other residents, our associates or visitors.

   You agree to pay for all damages to others or to the Rehabilitation/Skilled Nursing Center, which are caused by you or your scooter and that we may invoice you for such costs. You further understand and agree that we may, at our sole discretion, prohibit your further use of an electric scooter or similar vehicle at any time.

G. NOTIFICATION OF CHANGES

   1. Except in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is:

      (a) An accident involving the resident which results in injury;

      (b) A significant change in the resident's physical, mental, or psychosocial status;

      (c) A need to alter treatment significantly; or

      (d) A decision to transfer or discharge the resident from the facility.

VIII. **AGREEMENT TO ARBITRATE.** Should any of sub-sections A & B provided below, or any part thereof, be deemed void or invalid, the validity of the remaining sub-sections, or parts thereof, will not be affected.

   A. ARBITRATION PROCEEDINGS.
      1. Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Rehabilitation/Skilled Nursing Center, excluding any action for eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will _not_ decide their case.**

      2. The parties hereby expressly agree that this Agreement and the Resident's stays at the

Rehabilitation/Skilled Nursing Center substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") shall exclusively apply to the interpretation and enforcement of this Agreement, and shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law. However, nothing in this Agreement is to be construed to contradict any applicable Kentucky statutory grievance or mediation procedure. Any party who demands arbitration must do so for all claims or controversies that are known, or reasonably should have been known, by the date of the demand for arbitration, and if learned of during the course of the arbitration proceeding shall amend the claims or controversies to reflect the same. All current damages and reasonably foreseeable damages arising out of such claims or controversies shall also be incorporated into the initial demand or amendment thereto.

3. A demand for Arbitration by you, your legal representative, a person or organization acting on your behalf with your consent, or the personal representative of your estate (collectively "Resident Party") shall be made in writing and submitted to CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY, 40601, via certified mail, return receipt requested. Demand for Arbitration by us shall be made in writing and submitted to you or your agent, representative, successor or assign and/or your legal representative via certified mail, return receipt requested. The parties further agree that at completion of an unsuccessful statutory mediation, arbitration rather than a trial will be conducted consistent with this provision.

4. The arbitration proceedings shall take place in the county in which the Rehabilitation/Skilled Nursing Center is located, unless agreed to otherwise by mutual consent of the parties.

5. The arbitration panel shall be composed of one (1) arbitrator. Subject to the requirements of section A.5, the parties shall agree upon an arbitrator that must be a member of the Kentucky Bar with at least ten (10) years of experience as an attorney. If the parties cannot reach an agreement on an arbitrator within twenty (20) days of receipt of the Demand for Arbitration, then each party will select an arbitrator. These arbitrators will act only for the purpose of appointing a sole arbitrator to hear the case, subject to the criteria above. If either party fails to select their arbitrator within the (20) days mentioned above, they effectively forfeit their right to choose an arbitrator.

6. The arbitrator shall be unbiased of all parties, witnesses, and legal counsel. No past or present officer, director, affiliate, subsidiary, or employee of a party, witness, or legal counsel may serve as an arbitrator in the proceeding.

7. Discovery in the arbitration proceeding shall be governed by the Kentucky Rules of Civil Procedure. However, discovery may be modified by agreement of the parties.

8. The arbitrator shall designate a time and place within the county in which the Rehabilitation/Skilled Nursing Center is located, for the arbitration hearing and shall provide thirty (30) days' notice to the parties of the arbitration hearing.

9. The arbitrator shall apply the Kentucky Rules of Evidence and Kentucky Rules of Civil Procedure in the arbitration proceeding except where otherwise stated in this Agreement. Also, the arbitrator shall apply, and the arbitration decision shall be

consistent with, Kentucky law except as otherwise stated in this Arbitration Provision.

10. The arbitration decision should be signed by the arbitrator and delivered to the parties and their counsel within thirty (30) days following the conclusion of the arbitration. The decision shall set forth in detail the arbitrator's findings of fact and conclusions of law.

11. The arbitrator's decision shall be final and binding and such decision may only be vacated or modified as allowed by the Federal Arbitration Act.

12. The arbitrator's fees and costs associated with the arbitration shall be divided equally among the parties. The parties shall bear their own attorneys' fees and costs and hereby expressly waive any right to recover attorney fees or costs, actual or statutory.

13. The arbitration proceeding shall remain confidential in all respects, including the Demand for Arbitration, all arbitration filings, deposition transcripts, documents produced or obtained in discovery, or other material provided by and exchanged between the parties and the arbitrator's findings of fact and conclusions of law. Following receipt of the arbitrator's decision, each party agrees to return to the producing party within thirty (30) days the original and all copies of documents exchanged in discovery and at the arbitration hearing, except those documents required to be retained by counsel pursuant to law. Further, the parties to the arbitration also agree not to discuss the amount of the arbitration award or any settlement, the names of the parties, or name/location of the Rehabilitation/Skilled Nursing Center except as required by law.

14. The Arbitration Provision shall survive your death.

B. <u>BENEFITS OF ARBITRATION</u>. The parties' decision to select arbitration is supported by the potential cost-effectiveness and time-savings offered by selecting arbitration, which may avoid the expense and delay of judicial resolution in the court system. The parties' decision to select arbitration is supported by the potential benefit of preserving the availability, viability, and insurability of a long term care company for the elderly and disabled in Kentucky, by limiting such company's exposure to liability. With this Agreement, we are better able to offer our services and accommodations at a rate that is more affordable to you. In terms of the potential time-savings offered by selecting arbitration, the parties recognize that selecting a quick method of resolution is potentially to a resident's advantage.

You and/or your legal representative understand that other long term care companies' Agreements may <u>not</u> contain an arbitration provision. The parties agree that the reasons stated above are proper consideration for the acceptance of the Arbitration Provision. **The undersigned acknowledges that he or she has been encouraged to discuss this Agreement with an attorney.**

**The parties to this Agreement further understand that a judge and/or a jury will <u>not</u> decide their case.**

## IX. <u>ENFORCEMENT OF THIS AGREEMENT</u>

A. SOLE AGREEMENT – This Agreement, along with any Attachments, which are hereby included by reference, is the only Admission Agreement between the Rehabilitation/Skilled Nursing Center and you except that amendments due to changes in State or Federal law or regulations are automatically deemed to be part of this Agreement. Any other changes to this Agreement are valid only if made in writing and signed by all parties. If changes in State or Federal law make any part of this Agreement invalid, the remaining terms shall stand as a valid Agreement. If there are any conflicts between the Agreement and any Attachment, the terms of the Agreement shall prevail.

B. ASSIGNMENT – You agree that your right to reside at the Rehabilitation/Skilled Nursing Center is personal and is not assignable. You may not transfer your rights under this Agreement to any other person. This Agreement may be assigned by us without prior notice to you and you consent to such assignment.

C. CONCURRENT AGREEMENT – In the event you are in the Rehabilitation/Skilled Nursing Center for a temporary stay, any agreements by and between you and Brookdale Senior Living Inc. or its affiliates for assisted living or independent living shall remain in full force and effect. However, any conflict existing between the other agreement or agreements and this Agreement shall be resolved by the provisions of this Agreement as controlling.

X. GENERAL PROVISIONS

A. WHO IS COVERED BY THE AGREEMENT – In addition to the parties signing this Agreement, the Agreement shall be binding on the heirs, executors, administrators, distributors, successors, and assigns of said parties. That means your financial obligation to us for the services provided through this Agreement survives your death, and any remaining charges must be paid from your estate.

B. WAIVER OF RIGHTS UNDER THIS AGREEMENT – The failure of any party to enforce any term of this Agreement or the waiver by any party of any breach of this Agreement will not prevent the subsequent enforcement of such term, and no party will be deemed to have waived the right to subsequent enforcement of this Agreement.

C. SEVERABILITY – The terms and provisions of Agreement are severable. If any provision in this Agreement is determined to be illegal or unenforceable, then such provision will be deemed amended so as to render it legal and enforceable and to give effect to the intent of the provision; however, if any provision cannot be amended, it shall be deemed deleted from this Agreement without affecting or impairing any other part of this Agreement.

D. ATTACHMENTS – The Attachments to this Agreement are incorporated by reference herein and made a part hereof as if they were fully set forth herein.

E. GOVERNING LAW – This Agreement is executed and shall be governed by and construed in accordance with the laws of the state in which the Rehabilitation/Skilled Nursing Center is located.

F. NOTICES – All notices shall be deemed sufficiently given if mailed to the Resident and/or Resident Representative, if any, at the address indicated on the Signature Page. Each such person shall be responsible for notifying us in writing of any change of

address. In addition, we shall notify the person you designated of any significant change in your condition as required by law and regulation.

## XI. ACKNOWLEDGMENT

You acknowledge, by signing this agreement, that you have been provided, in a language you understand, the following:

- Attachment A – Covered and Non-Covered Services
- Attachment B – Resident Rights – federal and state
- Attachment C – Resident Responsibilities
- Attachment D – Grievance Policy
- Attachment E – Admission Policy
- Attachment F – Medication Policy
- Attachment G – Safety/Smoking
- Attachment H – Advance Directive Statement
- Attachment I – Admission Consent Form
- Attachment J – Notice of Privacy Practices
- Attachment K – Bed Hold Agreement

# AGREEMENT AS TO RESIDENT CHARGES

___ The Resident has been admitted on a self-paying basis and is not covered by Medicare or other insurance as primary payor.

The charges are as follows:

$_____ per day for a Private Room
$_____ per day for a Semi-Private Room
$_____ per day for a Respite Room

Each monthly amount is paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

___ The Resident is admitted as a Medicare/Insurance covered resident. At the expiration of Medicare/Insurance coverage, should the resident remain in the Rehabilitation/Skilled Nursing Center, the rate is $_____ per day. Each month is to be paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

___ The Resident is admitted as a Medicaid covered resident.

I understand and agree that if my payor source changes during my stay at the Rehabilitation/Skilled Nursing Center, I shall be responsible for applicable charges of the new payor source.

[Signature Page to Follow]

REHABILITATION/SKILLED NURSING CENTER
ADMISSION AGREEMENT SIGNATURE PAGE

Print Resident Name Donald Skipworth   Room Number 13 A

Admission Date 6/26/2015   Private Pay Daily Rate $ _____

Initial Primary Payor Source Expected:
   ____ Medicare
   ____ HMO or other Insurance _____
   ____ Private Pay
   ____ Medicaid

30 Day Private Pay pre-payment required: $ _____

**SIGNATURES:** THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ AND UNDERSTOOD THIS CONTRACT, AND THAT EACH VOLUNTARILY CONSENTS TO ALL OF ITS TERMS.

X _[signature]_   6/26/2014
Resident Signature                         Date

**AND/OR**

The Resident Representative signing below acknowledges an understanding and acceptance of all terms of this Agreement, with specific reference to their defined duties and obligations in section IV. K. of this Agreement.

_____   _____
Resident Representative Signature        Printed Name

Date: _____    E-mail Address: _____

Cell Phone: _____   Home Phone: _____   Work Phone: _____

Mailing Address Street, City, State, ZIP _____

Resident Representative executes this Agreement in the capacity checked below and shall provide evidence of Resident Representative(s) capacity at the time of signing this Agreement:

____ Power of Attorney under validly executed Financial POA/Healthcare POA/Durable POA.
____ Court Appointed Guardian
____ Personal Representative designated in writing by Resident to exercise rights protected under the Social Security Act and other purposes permitted by law.
____ Other: _____ (Immediate Family Member)

By: _[signature]_                    Brittany Walker
    Rehabilitation/Skilled Nursing Center Representative     Printed Name

Date: 6/26/2015